Aaron L. **ROBERTSON** and Spencer A. **Cowen,** Plaintiffs–Appellants and Cross–Appellees,

v.

**WESTMINSTER MALL COMPANY,** a Colorado corporation, Defendant–Appellee and Cross–Appellant.

No. 98CA1782.

Colorado Court of Appeals, Div. III.

Sept. 27, 2001.*

Certiorari Denied April 15, 2002.

---

* Prior Opinion Announced August 31, 2000, WITHDRAWN. Petition for Rehearing GRANTED.

Arrington & Rouse, P.C., James P. Rouse, Denver, CO, for Plaintiffs–Appellants and Cross–Appellees.

Aab & Botts, LLC, James L. Aab, Robert E. Botts, Jr., Denver, CO, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROY.

Plaintiffs, Aaron L. Robertson and Spencer A. Cowen, appeal from a judgment validating certain regulations of defendant, Westminster Mall Company (Westminster), that operated to limit plaintiffs' "witnessing" activities at the Westminster Mall (Mall). Westminster cross-appeals that portion of the order invalidating other regulations. We affirm in part, reverse in part, and vacate in part.

Plaintiffs engaged in a religious activity known as "witnessing," which involves contacting persons and engaging in an explanation or discussion of the gospel of Jesus Christ. Plaintiffs approached strangers to converse with them, and if a stranger responded positively, plaintiffs would hand him or her an informational pamphlet.

Plaintiffs conducted witnessing at the Mall. They contacted patrons who were approximately their age, i.e., young adults. The largest concentration of young adults at the Mall is found near the center court, the Disney Store, the game arcade, and the movie theaters.

On several occasions, security personnel asked plaintiffs to leave because they had not applied for permission to engage in their activities at the Mall. Other times, security personnel advised plaintiffs to go to the management office to obtain permission. In one incident, security personnel allegedly detained one of the plaintiffs for witnessing in a tenant's store rather than in the common areas.

Plaintiffs filed suit seeking declaratory and injunctive relief enjoining Westminster from enforcing its rules and regulations restricting plaintiffs' rights to engage in witnessing activities at the Mall.

The trial court, relying on article II, section 10 of the Colorado Constitution, which guarantees an individual's freedom to speak,

write, or publish, found the following regulations to be unreasonable and, therefore, unconstitutional: (1) a two-month "blackout" period during particularly busy times of the year; (2) a two-working-days (forty-eight-hour rule) and a revised one-working-day (twenty-four-hour rule) period to review applications for access to the Mall to solicit patrons, with applications necessary for each use; (3) an insurance requirement that an applicant obtain a $1 million general liability insurance policy as a condition of approval; and (4) a regulation prohibiting more than three people from using the designated free speech areas at any time.

The court found all the other regulations reasonable, including the regulation designating certain free speech areas in the Mall and restricting plaintiffs' activities to those areas. Plaintiffs appeal this latter ruling, and Westminster cross-appeals parts of the former.

■ Our review is *de novo*. *Lewis v. Colorado Rockies Baseball Club*, 941 P.2d 266 (Colo.1997). In this case, as in *Lewis*, the facts, for the most part, are not disputed, although the legal conclusions to be drawn from those facts are very much in dispute.

■ The United States Supreme Court has held that there is no First Amendment right to solicit or distribute handbills on the premises of a privately owned and operated shopping center. *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). States can, however, extend freedom of speech protections beyond the First Amendment so as to limit the right of the owner of a shopping center to prohibit or regulate free speech activities. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

In pertinent part, article II, section 10 of the Colorado Constitution states:

No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty....

■ This provision provides greater protection for freedom of speech activities than does the First Amendment. *See Parrish v. Lamm*, 758 P.2d 1356 (Colo.1988).

In *Bock v. Westminster Mall Co.*, 819 P.2d 55 (Colo.1991), the supreme court held that Westminster was obligated to provide a forum for individuals wishing to exercise their free speech rights. The *Bock* court also stated that Westminster was free to impose restrictions on the time, place, and manner of speech activities, provided the restrictions were content neutral and narrowly tailored, addressed a significant interest, and left open ample alternative channels of communication.

At the outset, we note that the parties did not dispute that the regulation limiting protected free speech activities to the food court is content neutral. They also do not dispute that Westminster has legitimate interests to protect and a right to regulate the time, place, and manner of speech activities for that purpose. The only issues presented on appeal are whether the regulations and limitations imposed are too restrictive and whether the regulations leave open alternative means of communication.

I.

■ Plaintiffs first contend that the trial court erred in upholding the regulation limiting free speech activities to a designated area, specifically, the food court. We disagree.

The location limitations imposed by Westminster limited free speech activities to three locations, two in front of department stores and the third in the food court. The trial court found the first two insufficient, standing alone, but concluded that the third, the food court, was constitutionally sufficient.

With respect to the food court as a forum for free speech activity, the trial court found, with support in the record, as follows:

The food court space is by a major entrance of the Mall which has been characterized as the single most important entrance. The space is reasonably large, extends five feet into the main north/south traffic corridor of the Mall and is close to the food court which is clearly a major attraction to people of all ages and demographic description who enter the Mall.... Although the food court space

may not be the ideal location for targeting any particular group, it is a perfectly reasonable space whereby contact can generally be made with a significant number of people who enter and go to the Mall. I am not persuaded that the presence of the telephones or the presence of trees makes the food court space an inadequate location, and its size appears to be adequate and the access to major portions of the public appears to the Court to be adequate.

The evidence shows that, in determining which areas to designate as free speech areas, Westminster considered the following factors: (1) the nature of protected free speech rights, (2) the rights of the Mall patrons and Westminster's responsibilities to those patrons, (3) the commercial nature of the Mall's business enterprise, (4) the layout and design of the Mall, (5) security and safety issues, (6) the free flow of pedestrian traffic, (7) the need to provide Mall patrons with unimpeded access to stores, (8) the need to provide persons exercising their right to free speech access to Mall patrons, (9) the need to avoid the obstruction of stores, and (10) the presentation and operation of promotional events.

Here, while plaintiffs' access to the patrons of the Mall is not universal, it is apparent that they have an opportunity to contact a substantial portion of the Mall patrons on any given day and at any given time. Therefore, the regulation limiting plaintiffs' witnessing to the food court area is reasonable and not unduly restrictive.

Plaintiffs, relying on *Lewis v. Colorado Rockies Baseball Club, supra,* argue that they need access to one hundred percent of the Mall's common areas and patrons. However, in *Lewis,* the plaintiff sought permission to distribute his game-day alternative baseball programs and scorecards outside of Coors Field to fans entering the ballpark to attend a game. The Colorado Rockies prohibited such distribution by anyone other than its exclusive licensee. The supreme court found this prohibition unconstitutional because, *inter alia,* there were no other effective alternative channels of communication for the sale of game-day baseball programs

except in, or immediately adjacent to, the ballpark.

Here, in contrast, plaintiffs request access for witnessing purposes to all the common areas of the Mall so that they may have an opportunity to talk to the maximum number of people in a given time. More particularly, they wish access to locations within the Mall that they have concluded are most frequented by young adults, their target audience. Unlike *Lewis,* the target audience here is not limited as to both location and time. A general audience of young adults can be found at many different locations and special events in the Mall and at different and varied times.

Plaintiffs' request for unlimited access to the Mall ignores Westminster's right reasonably to regulate the time and place of the activity on its property. Plaintiffs have not cited any case that requires the owner of a private shopping center to grant access to the entire shopping center to those seeking to communicate with the patrons. Indeed, all of the authority of which we are aware allows the owner of a shopping center to limit such conduct to certain locations. *See, e.g. Union of Needletrades v. Superior Court,* 56 Cal.App.4th 996, 65 Cal.Rptr.2d 838 (1997).

We therefore conclude that Westminster's regulation designating the food court for free speech activity does not violate the free speech rights of the plaintiffs. The food court area provides an adequate forum in which to convey plaintiffs' ideas to their intended audience while allowing the Mall to carry on its legitimate business.

## II.

On cross-appeal, Westminster asserts that the trial court erred in finding unreasonable the regulation allowing it forty-eight hours to review an application for activities in the Mall and requiring a separate application for each date. After the preliminary injunction had issued, the Mall modified its rule to provide for a twenty-four hour review period (Saturdays, Sundays, and holidays excluded), with each approval good for six months, and with use on a space-available basis after checking in with the security office. The trial court ruled on both review

periods and declared them both unconstitutional, while approving the space-available and check-in procedure of the revised rule. We conclude that the twenty-four-hour rule is constitutional, but that the forty-eight-hour rule is not.

The trial court relied on *Lloyd Corp. v. Whiffen*, 315 Or. 500, 849 P.2d 446 (1993), which held that a twenty-four-hour waiting period was unreasonable. However, after the trial court's ruling, the Oregon Supreme Court overruled *Lloyd* in *Stranahan v. Fred Meyer, Inc.*, 331 Or. 38, 11 P.3d 228 (2000), and held that the Oregon Constitution does not grant a right of access to privately owned shopping malls for the purposes of circulating initiative and referendum petitions and that *Lloyd* did not state the law of Oregon in that regard.

*Lloyd* was based on the court's interpretation of a then-recent constitutional amendment granting Oregon citizens the right of initiative and referendum, Or. Const. art. IV, § 1, not the right of free speech and association accorded citizens of Oregon under the First Amendment or its state counterparts, Or. Const. art. I, §§ 8, 26. The rationale of the court in *Lloyd* was that the twenty-four-hour waiting period, which was there imposed with respect to each use of the mall by the applicant, deterred some individuals from participating in free speech activity at the mall, and the mall owner was unable to show that disruption was likely without the review period.

While the underlying right to petition on private property is no longer viable in Oregon, the rationale of *Lloyd* with respect to the impact of an automatic waiting period is, in our view, clearly viable. Westminster argues that its policy, both in wording and application, is substantially different from the policy at issue in *Lloyd*. Like the mall owner in *Lloyd*, Westminster argues that the review period is necessary so that management can be informed as to who, what, where, when, and how any free speech activity will be conducted in the Mall. Westminster asserts that, by having advance notice, it has time to advise security and to determine any additional staffing needs. However, Westminster further contends that its application

of the policy is different from that at issue in *Lloyd* because it requires an application only once every six months, whereas, in *Lloyd*, the mall owner required an application each time a person wanted to engage in a free speech activity. We agree that Westminster's application of the mandatory waiting period is different as to the revised twenty-four-hour rule, but not as to the original forty-eight-hour rule. We note, in addition, that the free speech activity at issue in *Lloyd* was limited to petitioning to place an initiative or referendum question on the ballot. In contrast, the range of activities for which persons have a state constitutional right, based on freedom of speech, of access to private property in Colorado is considerably broader.

■ Because of the paucity of authority addressing access to private property for free speech activities, we consider the reasonable waiting periods that may be imposed in applying for access to public facilities for similar activities. Public entities may place reasonable time, place, and manner of speech restrictions in public places and the public forum. *See generally* 4 R. Rotunda & J. Nowak, *Treatise on Constitutional Law* §§ 20.45 to 20–47 (1999).

In *Local 32B–32J, Service Employees International Union v. Port Authority*, 3 F.Supp.2d 413 (S.D.N.Y.1998), the court held a thirty-six-hour waiting period constitutional. In *Local 32B–32J*, the union filed a declaratory judgment action seeking to enjoin the enforcement of rules adopted by the Port Authority regulating free speech activities, namely labor picketing, at the World Trade Center and the Port Authority Bus Terminal. Among the rules considered by the court was a rule that required an application thirty-six hours prior to the proposed use, approval within twenty-four hours, and an elaborate appellate procedure in the event an application was initially denied. The court upheld the waiting period based on evidence that it was necessary to prevent disruptions and "self-evident" that expressive activities on controversial issues may require additional security, and on the grounds that longer waiting periods had been upheld in other jurisdictions. *See Quaker Action*

*Group v. Morton,* 516 F.2d 717 (D.C.Cir.1975)(upheld forty-eight hours waiting period); *Powe v. Miles,* 407 F.2d 73 (2d Cir.1968)(upholding a public university's requirement of forty-eight-hours notice of a demonstration on campus is constitutional); *Local 32B–32J, Service Employees International Union v. Port Authority,* 944 F.Supp. 208 (S.D.N.Y.1996) (thirty-six-hour waiting period, while probably not necessary in many instances, must be required of all applicants to meet requirement that regulations be content neutral); *but see NAACP v. City of Richmond,* 743 F.2d 1346 (9th Cir.1984)(twenty-day waiting period for permit for parade protesting racial discrimination is unconstitutional).

■ Certainly, a mall owner is entitled to a reasonable time within which to investigate and determine whether to grant a permit for free speech activities; in this regard the mall owner's entitlement is certainly not less than that of a public entity. Its duty to its tenants and customers to maintain an orderly and safe environment and its potential liability for a breach of that duty, compels the conclusion that it be permitted a reasonable time to evaluate or investigate persons wishing access for protected free speech activities.

The amount of time reasonably necessary to evaluate each application will vary with such circumstances as the nature of the activity, the number of persons involved, the subject or issue involved, the reputation of the person or entity involved for conducting the activities in a safe and orderly manner, and the past experience of the mall owner with the person or entity, if any. Establishing a fixed period within which the mall owner must act on an application has risk for the mall owner, so that the period must be sufficiently long to investigate, evaluate, and prepare for a wide range of possible free speech activities, without unduly hampering the free speech activity of the applicant.

Here, there is evidence in the record to support the conclusion that the forty-eight-hour rule, coupled with the requirement that a new application be submitted for each exercise, is likely to deter, unnecessarily, the filing of an application. Therefore, we agree with the trial court that the original forty-eight-hour rule with its re-application requirement is unconstitutional.

However, we also conclude that the twenty-four-hour rule, with its provision that only one application need be made every six months and with a check-in procedure prior to each individual activity, is reasonable and necessary to protect the legitimate concerns of the mall owner. Thus, we conclude that the twenty-four-hour rule, with its accompanying extended access on a space-available basis subject to checking in with security personnel, is reasonable, balances the legitimate concerns of the mall owner with the rights of the applicant, and does not violate plaintiff's right of free speech.

### III.

■ Westminster next asserts that the trial court erred in finding unreasonable its rule requiring a general liability insurance policy with liability limits of $1 million. However, the record discloses, and the parties agree, that this rule has never been applied to an applicant, and representatives of Westminster testified that the rule was intended to apply to activities that primarily involved passing out literature and would not be applied to plaintiffs in the future. We conclude that this aspect of the judgment must be vacated.

■ An actual controversy is an essential requisite to jurisdiction. A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe or to decide a case on a speculative, hypothetical, or contingent set of facts. *Bickel v. City of Boulder,* 885 P.2d 215 (Colo.1994). When there is no live controversy between the parties, the trial court lacks subject matter jurisdiction to proceed. *See Carreathers v. Carreathers,* 654 P.2d 871 (Colo.App.1982).

■ Even when declaratory relief is sought, there must be an actual controversy, *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556 (Colo.1996), and any potential resolution by the court of such an action must relieve the parties of uncertainty and insecurity with respect to their rights, status,

and legal relations. *Buckley Powder Co. v. State,* 924 P.2d 1133 (Colo.App.1996), *rev'd on other grounds,* 945 P.2d 841 (Colo.1997).

Because it is conceded that the insurance requirement will not be imposed upon these plaintiffs, the trial court should not have addressed its constitutionality. Thus we must vacate that part of the trial court's judgment.

The judgment is reversed to the extent the twenty-four-hour rule was declared unconstitutional. The judgment of the trial court is affirmed in all other respects except as to the invalidation of the regulation requiring a $1 million bond. As to that regulation, the judgment is vacated.

Judge PLANK and Judge CASEBOLT concur.