**Alexander DiCOCCO, Plaintiff–Appellant,**

v.

**NATIONAL GENERAL INSURANCE COMPANY, a Missouri corporation, Defendant–Appellee.**

No. 04CA2589.

Colorado Court of Appeals, Div. IV.

May 18, 2006.

Rehearing Denied June 29, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

The Carey Law Firm, L. Dan Rector, Leif Garrison, Robert B. Carey, Colorado Springs, Colorado; Todd Travis, Englewood, Colorado, for Plaintiff–Appellant.

Wheeler Trigg Kennedy, LLP, Sean D. Baker, John M. Vaught, Meghan Frei Berglind, Denver, Colorado, for Defendant–Appellee.

VOGT, J.

Plaintiff, Alexander DiCocco, appeals the trial court judgment dismissing his complaint against defendant, National General Insurance Company, on the ground that his claims were not ripe for adjudication. We affirm.

I.

Plaintiff was injured in October 2000 when a car hit him while he was walking in a pedestrian walkway. At the time of the accident, plaintiff's own vehicles were insured under a policy issued by defendant that provided the basic personal injury protection (PIP) coverage required by the former Auto Accident Reparations Act (No–Fault Act), Colo. Sess. Laws 1973, ch. 94, § 13–25–1, et seq., at 334 (formerly codified as amended at § 10–4–701, et seq.; repealed effective July 1, 2003, Colo. Sess. Laws 2002, ch. 189, § 10–4–726 at 649). However, because his vehicles were not involved in the accident, plaintiff was entitled under former § 10–4–707(3) to claim PIP benefits from Travelers Indemnity Co. of America, which insured the car that struck him.

After receiving the basic PIP benefits provided under the Travelers policy, plaintiff sued Travelers. He claimed that the PIP benefits were insufficient to compensate him fully for his losses, and that Travelers was obligated to provide him with the maximum extended PIP benefits available under former § 10–4–710(2)(a) because it had not fulfilled its obligation under that statute to offer such extended coverage to its insureds.

While that case was pending, plaintiff filed this action against defendant and other insurers who are not parties to this appeal. As in the Travelers case, plaintiff claimed that defendant had never offered him extended PIP coverage in accordance with former § 10–4–710(2)(a). He sought a declaration that he was entitled to "the fullest amount of extended PIP coverage mandated by C.R.S. § 10–4–710," and sought actual and enhanced damages on various theories. Both cases were brought as class actions on behalf of plaintiff and similarly situated insureds.

Defendant moved to dismiss plaintiff's claims against it for lack of subject matter

jurisdiction. It argued that it was an excess insurer in this circumstance and that plaintiff's claims against it were not ripe until plaintiff established the limits of, and then exhausted, his primary coverage under the Travelers policy. The trial court agreed and dismissed the case against defendant.

## II.

Plaintiff contends that the trial court erred in concluding that defendant was an excess insurer and in dismissing his complaint on ripeness grounds based on that conclusion. We disagree.

### A.

■ When a court's subject matter jurisdiction is challenged in a motion to dismiss pursuant to C.R.C.P. 12(b)(1), the plaintiff has the burden to prove jurisdiction, and the trial court may consider any competent evidence pertaining to the motion. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993); *Egle v. City & County of Denver*, 93 P.3d 609 (Colo. App.2004). On appeal, we review the trial court's factual findings under the clear error standard but review its legal conclusions de novo. *Egle v. City & County of Denver, supra.*

■ A court lacks subject matter jurisdiction to decide an issue that is not ripe for adjudication. *See Stell v. Boulder County Department of Social Services*, 92 P.3d 910 (Colo.2004); *Robertson v. Westminster Mall Co.*, 43 P.3d 622 (Colo.App.2001).

■ The doctrine of ripeness recognizes that courts will not consider uncertain or contingent future matters because the injury is speculative and may never occur. *Stell v. Boulder County Department of Social Services, supra.* Thus, to be ripe, the issue must be "real, immediate, and fit for adjudication." *Board of Directors v. National Union Fire Insurance Co.*, 105 P.3d 653, 656 (Colo.2005)(where insured sought an answer to a not-yet-ripe insurance question, district court should have dismissed insured's petition).

An excess insurer is one whose coverage of a given loss is activated only after the magnitude of the loss exceeds the limits of the applicable "primary" insurance. Primary insurance, the counterpart of excess insurance, provides coverage of a given loss at the "first level" of loss, after satisfaction of any deductible. 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1:4 (3d ed.2005); *see Public Service Co. v. Wallis & Cos.*, 986 P.2d 924 (Colo.1999) (noting, for guidance on remand, that primary insurance had to first be exhausted and then, if liability remained, excess policies were required to respond); *Eisenhower Hospital Osteopathic v. Taylor*, 43 Colo.App. 498, 609 P.2d 1114 (1979)(because loss did not exceed limits of primary insurance policies, excess insurer was not liable for any portion of loss).

■ Thus, damages claims against excess insurers are not ripe if it has not yet been determined that the insured's losses exceed the primary policy limits. When the remedy sought is declaratory relief rather than damages, the courts are in general agreement that it is not necessary to provide absolute proof that an excess insurer's policies will be triggered in order to establish an actual controversy ripe for adjudication. However, a claim for declaratory judgment regarding coverage under an excess policy will be dismissed if the plaintiff does not show that it is reasonably likely that coverage under the excess policy will be triggered. *See Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671 (2d Cir.1996)(excess insurers entitled to dismissal of declaratory judgment action for lack of ripeness where there was no evidence that their coverage was likely to be reached); *Raytheon Co. v. Continental Casualty Co.*, 123 F.Supp.2d 22 (D.Mass.2000)(dismissal unwarranted where excess insurer was also primary insurer and it was not yet determined whether insured was reasonably likely to reach excess policies); *Hoechst Celanese Corp. v. National Union Fire Insurance Co.*, 623 A.2d 1133, 1137 (Del.Super.Ct.1992) (when plaintiff does not show a reasonable likelihood that claims will mature as to excess insurers, "it would be a waste of judicial resources and an unnecessary expense to the parties to force excess insurers to defend a

coverage action when their coverage is unlikely to ever be implicated"); *Kings Park Industries, Inc. v. Affiliated Agency, Inc.*, 22 A.D.3d 466, 802 N.Y.S.2d 202 (2005)(declaratory judgment claim should have been dismissed where it was uncertain whether plaintiff would be found liable for an amount in excess of its primary liability coverage); *see also City of Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159 (D.Colo.1990) (dismissing insured's complaint against primary and excess insurers for declaratory judgment on coverage where (1) absent primary insurers were indispensable, (2) their joinder would destroy diversity jurisdiction, and (3) excess insurers' liability was dependent upon determination of whether absent primary insurers provided coverage).

### B.

▪ Plaintiff contends that the ripeness requirements applicable to claims against excess insurers did not support dismissal here because defendant was not in fact an excess insurer under the facts of this case. We disagree.

### 1.

A policy written as "primary" insurance may become excess in certain circumstances where there is more than one potentially applicable primary policy and coverage is not prorated between the policies. *See Couch on Insurance, supra*, § 1:4. For example, a statute may determine which policy is primary in circumstances where more than one policy is potentially available. *See Mid–Century Insurance Co. v. Travelers Indemnity Co.*, 982 P.2d 310 (Colo.1999)(under No–Fault Act, injured passenger was entitled to PIP coverage under driver's insurance policy, and such coverage was primary over coverage available under passenger's personal automobile policy).

One such statute, applicable here, is former § 10–4–707(3), which stated, in relevant part:

> [W]hen a person injured is also an insured under a complying policy other than the complying policy insuring the vehicle out of the use of which the accident arose, primary coverage shall be afforded by the policy insuring said vehicle under section 10–4–706; but in the event two or more insurers have obligations under complying policies to pay benefits to the same person, the limits of coverage available as benefits to such person shall be the limits of a single complying policy except to the extent that optional coverages purchased for additional premiums on a voluntary basis are applicable. In the event two or more insurers are liable to pay benefits on the same basis, any insurer paying benefits shall be entitled to an equitable pro rata contribution from such other insurer.

Under the first sentence of § 10–4–707(3), primary coverage for plaintiff's injuries in this case was to be afforded by the policy insuring "the vehicle out of the use of which the accident arose"—that is, the Travelers policy insuring the car that struck plaintiff. Although plaintiff's vehicles were insured under defendant's policy, defendant's policy was excess to that of Travelers, which became the primary insurer under § 10–4–707(3) in this auto-pedestrian accident situation. *See Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Progressive Casualty Insurance Co. v. Farm Bureau Mutual Insurance Co.,* 53 P.3d 740 (Colo.App.2002).

### 2.

Notwithstanding the first sentence in § 10–4–707(3), plaintiff argues that defendant is a "co-primary" insurer and that it has a duty to pay benefits first and then seek contribution from Travelers. However, the authorities on which plaintiff relies address situations contemplated in the last sentence of § 10–4–707(3)—namely, situations in which two or more insurers are "liable to pay benefits on the same basis." Although the insurers in the cases cited by plaintiff were found to be liable for benefits "on the same basis" and were thus required to seek equitable pro rata contribution from one another, the decisions recognize that a different result would be warranted if the case fell within the first sentence of § 10–4–707(3).

In *Progressive Casualty Insurance Co. v. Farm Bureau Mutual Insurance Co., supra,* plaintiff's primary authority, a pedestrian

was struck by a car while she was attempting to help the occupant of another vehicle that had flipped over and gone off the road. Because her injuries were also the indirect result of her use of her own vehicle, all three insurers involved were responsible to pay a pro rata share of the pedestrian's PIP benefits. However, the division noted, "[h]ad the accident involved only the vehicles insured by [the insurers of the overturned vehicle and the car that struck the plaintiff], then, under the first clause of § 10–4–707(3) ... those two insurers would be solely responsible for payment of the PIP benefits." *Progressive Casualty Insurance Co., supra,* 53 P.3d at 742; *see also Government Employees Insurance Co. v. MFA Mutual Insurance Co.,* 802 P.2d 1122, 1124 (Colo.App.1990) (insurer of injured pedestrians' vehicle was responsible, along with the other driver's insurer, GEICO, for payment of PIP benefits because pedestrians' vehicle was also tangentially involved in the accident; however, "[i]f the accident involved only the GEICO insured vehicle then, under the first sentence of § 10–4–707(3), GEICO, as the insurer of the vehicle 'out of the use of which the accident arose,' would be primarily responsible for payment of the PIP benefits").

In this case the accident did not, even tangentially, involve plaintiff's vehicles. Thus, plaintiff's authority is inapposite.

### 3.

Plaintiff also argues that, even if § 10–4–707(3) makes the driver's insurer primarily liable for provision of basic PIP coverage, the "primacy" rule of that statute does not apply here because he is seeking extended PIP coverage, not basic PIP coverage. Again, we disagree.

As noted above, plaintiff has asserted in this action and in his action against Travelers that he is entitled to extended PIP coverage, beyond the basic PIP coverage provided to him, because the insurers failed to offer such optional extended coverage, as required under former § 10–4–710(2)(a). *See generally Snipes v. American Family Mutual Insurance Co.,* 134 P.3d 556 (Colo.App.2006); *Thompson v. Budget Rent–A–Car Systems, Inc.,* 940 P.2d 987 (Colo.App.1996). He ar-gues that the primacy rule of § 10–4–707(3) does not apply to the extended PIP coverage he is seeking, because § 10–4–707(3) references only § 10–4–706 (which addresses PIP coverage under the No–Fault Act), and not § 10–4–710 (which addresses optional extended PIP coverage). We are not persuaded.

Upon consideration of former § 10–4–707 as a whole, we conclude the General Assembly did not intend to limit the primacy rule of § 10–4–707(3) to situations involving only basic PIP coverage. Rather, the reference to "under section 10–4–706" in the first sentence of § 10–4–707(3) was intended to explain that the primary policy was, specifically, the one providing PIP coverage for the driver's vehicle. We reach that conclusion for several reasons.

First, we find persuasive the analysis in *Brennan v. Farmers Alliance Mutual Insurance Co.,* 961 P.2d 550 (Colo.App.1998), in which a division of this court held that extended PIP coverage under § 10–4–710(2)(a) also applied to pedestrians. In so holding, the division rejected the insurer's argument that, because § 10–4–707(1) referred only to coverages required by § 10–4–706, only the basic PIP coverage required under § 10–4–706 had to be offered to pedestrians:

> Although Farmers correctly notes that § 10–4–710(2)(a) does not list [or] refer to persons who are eligible for coverage, when this section is read in context, it is apparent that the extended coverages offered there must apply to the categories of persons listed in § 10–4–707(1). Specifically, in § 10–4–710, extended coverage is to be made available "in addition to the coverage described in § 10–4–706." The "types" of extended coverage to be provided are the "types" described in § 10–4–706(1)(b). And, the coverages provided in § 10–4–706(1)(b) apply without distinction to all categories of persons listed in § 10–4–707(1). Thus, by the plain terms of these provisions, § 10–4–710 describes an option to purchase coverage, but at higher limits, for the same persons and under the same conditions applicable to mandatory basic PIP coverage.

*Brennan v. Farmers Alliance Mutual Insurance Co., supra,* 961 P.2d at 553. Similarly here, the reference to § 10–4–706 concerns the type of coverage—PIP coverage—that implicates the primacy rule in § 10–4–707(3).

Second, although the General Assembly expressly excepted certain situations from the primacy rule in former §§ 10–4–707(4) and 10–4–707.5, it did not state anywhere that extended PIP coverage was excepted from that rule. Its failure to do so is particularly significant in light of its express exclusion, later in § 10–4–707(3), of extended PIP from the statute's prohibition on policy stacking:

> [I]n the event two or more insurers have obligations under complying policies to pay benefits to the same person, the limits of coverage available as benefits to such person shall be the limits of a single complying policy *except to the extent that optional coverages purchased for additional premiums on a voluntary basis are applicable.*

(Emphasis supplied.)

Third, drawing the distinction urged by plaintiff would produce an anomalous result. Here, if defendant had in fact offered extended PIP coverage under § 10–4–710(2)(a), as plaintiff contends it should have done, it would find itself in a worse position, in that it would be liable for plaintiff's PIP benefits as a co-primary insurer rather than only as an excess insurer. *See Hall v. Walter,* 969 P.2d 224 (Colo.1998)(court must avoid statutory interpretation that would lead to absurd result).

In sum, we conclude that defendant was an excess insurer for purposes of covering plaintiff's losses arising out of the accident.

### C.

■ Finally, we agree with the trial court that plaintiff did not meet his burden of establishing that his claims against defendant were ripe for adjudication.

As set forth above, damages claims against an excess insurer are not ripe until the plaintiff has exhausted the primary insurance coverage. Further, a claim for declaratory relief is not ripe unless the plaintiff can show there is a reasonable likelihood that the excess policy will be reached. Plaintiff made no such showing here.

Defendant provided the trial court with a copy of plaintiff's complaint against Travelers in which he was seeking to recover the "maximum extended benefits available under C.R.S. § 10–4–710." These benefits would potentially be either unlimited or, depending on the terms of the original policy, subject to an aggregate limit of $200,000. *See Snipes v. American Family Mutual Insurance Co., supra.*

Defendant also provided the court with an order entered by the trial court in the Travelers case. Although that court declined to enter summary judgment dismissing plaintiff's claims against Travelers, it noted that it was "extremely doubtful that a genuine issue of fact exist[ed]" as to whether plaintiff had been fully compensated, in that (1) Travelers' basic PIP coverage had covered all of plaintiff's damages except a $6,500 wage loss amount, and (2) plaintiff had recovered $85,000 in settlement of a separate lawsuit against the tortfeasor, and the settlement proceeds were potentially available to compensate plaintiff for his wage loss.

In light of this evidence, which the trial court could properly consider in ruling on a C.R.C.P. 12(b)(1) motion, *see Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra,* and which plaintiff did not dispute, the trial court was entitled to conclude that plaintiff had not met his burden of showing a reasonable likelihood that defendant's excess policy would be reached. Therefore, the court did not err in dismissing the complaint pursuant to C.R.C.P. 12(b)(1).

The judgment is affirmed.

Judge CASEBOLT and Judge FURMAN concur.