24CA0657 Peo in Interest of BER 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0657
Jefferson County District Court No. 23JV30028
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Appellee,

In the Interest of B.E.R., a Child,

and Concerning B.M.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Freyre and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Debra W. Dodd, Counsel for Youth, Berthoud, Colorado, for B.E.R.

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1      B.M. (mother) appeals the judgment allocating parental responsibilities for B.E.R. (the child) to P.R. (father). We affirm.

## I. Background

¶ 2      In December 2022, the Jefferson County Division of Children, Youth and Families (Division) began investigating allegations that mother had physically and emotionally abused the child (who was twelve years old at the time) and that mother's behavior was triggered by her excessive alcohol use. The Division spoke with father, who indicated that, even though the parents had a court-ordered parenting time schedule, he had not had any contact with the child in several years. Based on these allegations, the Division filed a petition in dependency and neglect. The juvenile court granted temporary legal custody to the Division, and the Division placed the child with maternal grandmother.

¶ 3      The parents admitted to the allegations in the petition, and the juvenile court adjudicated the child dependent and neglected. The court then adopted treatment plans for the parents. Mother's treatment plan required her to address her substance abuse, mental health, and anger issues. Father's plan directed him to demonstrate that he could provide for the child's needs.

1

¶ 4    In January 2024, the child moved to Texas to live with father, and the Division moved for an allocation of parental responsibilities (APR) to him.  The juvenile court held an evidentiary hearing in March 2024.  After hearing the evidence, the court entered an APR that (1) gave father primary residential custody and sole decision-making authority and (2) did not provide for any parenting time for mother.  The court then directed the Division to file a certified copy of the APR into the parents' previous domestic relations case.

## II.    Discussion

¶ 5    Mother asserts that the juvenile court erred by allocating parental responsibilities for the child to father and declining to award her parenting time.  We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 6    The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities and addressing parenting time when it maintains jurisdiction in a case involving a child who is dependent and neglected.  § 19-1-104(1)(c), (5)-(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.  Once a juvenile court enters an APR order in a dependency and neglect proceeding, it should direct a party to file a certified copy of the

2

order in the district court, ending the dependency and neglect proceeding. *People in Interest of M.R.M.*, 2021 COA 22, ¶¶ 19, 40; *see also* § 19-1-104(5), (6)(b). Upon such filing, the order entered in the dependency and neglect proceeding "must be treated in the district court as any other decree issued in a proceeding concerning the allocation of parental responsibilities." § 19-1-104(6)(b).

¶ 7 When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005). The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995). Consequently, the court must allocate parental responsibilities in accordance with the child's best interests. *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996). The court may also consider the child's best interests under the factors listed in section 14-10-124, C.R.S. 2024, of the Uniform Dissolution of Marriage Act, as long as the court's focus

3

remains on the child's protection and safety and not on the parent's custodial interests. *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 8 An APR is within the juvenile court's discretion and will not be disturbed on review if the judgment is supported by competent evidence in the record. *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003). It is for the court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010); *see also In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

## B. Analysis

¶ 9 The juvenile court determined that it was in the child's best interests (1) to remain in father's custody; (2) for father to have sole decision-making authority; and (3) to prohibit mother from exercising any parenting time. In support, the court relied primarily on the child's statements made during an in-camera interview and the caseworker's testimony and expert opinions. *See H.K.W.*, ¶ 17 ("[A] trial court is permitted to conduct an in camera

interview with a child to determine a child's best interests and how to allocate parental responsibilities within a dependency and neglect proceeding.").  As described below, because the record supports the court's decision to allocate parental responsibilities to father, we decline to disturb it.  *See A.M.K.*, 68 P.3d at 565; *see also People in Interest of A.S.L.*, 2022 COA 146, ¶ 26 (affirming the court's decision that limited the mother's parenting time because the record supported a finding that it was in the child's best interests).

¶ 10     The juvenile court found that that the child felt "very safe with her father" and did not want to have contact with mother at this time.  *See* § 14-10-124(1.5)(a)(II) (allowing the court to consider the "wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences").  During the in camera interview, the child told the court that she wanted to stay with her father because they "get along really well," he puts her mental health needs first, and "he's just really there for" her.  As for mother, the child said that she wanted to focus on "healing" and therefore would prefer to "wait until [she was] an adult to reach out to [mother]."

¶ 11 The caseworker testified that mother did not complete her treatment plan. For example, the caseworker said that mother was discharged from multiple treatment providers because of "concerning e-mails and interactions" with her therapists, in which mother became very "escalated." Mother did not participate in any treatment for almost six months thereafter, and she restarted treatment only a few months before the APR hearing. Mother also competed an assessment for therapeutic visits, but the evaluator did not recommend visits with the child until both mother and child could progress further in their own individual therapy. Mother sat for a reevaluation several months later, but the evaluator made the same recommendations after mother "became escalated" and "disconnected from the conversation."

¶ 12 In contrast, the caseworker said that father had done everything that the Division had asked of him and completed each step of his treatment plan. Father completed a therapeutic assessment and had in-person contact with the child in Colorado, followed by supervised calls and texts, and finally, extended visits with the child at his home in Texas. Then, in January 2024, the

child moved in with father, and the caseworker said that the child was "doing very well" in father's home.

¶ 13     The caseworker opined that (1) the child should remain in her father's care; (2) father should be granted sole decision-making authority; and (3) mother should not have any parenting time. The caseworker further testified that mother should not have contact with the child until she participates in substance abuse, mental health, and anger management treatment; demonstrates ongoing behavioral changes; and shows that she can meet the child's emotional needs. The caseworker opined that, until mother could do these things, she posed a danger to the child's physical health and emotional well-being. § 19-1-102(1)(c) (noting that a child should be removed from a parent's care "only when [the child's] welfare and safety . . . would otherwise be endangered"). In particular, the caseworker was concerned about the child's safety if mother had contact with her, considering how escalated she had become with professionals, lawyers, and even the judge.

¶ 14     Mother asserts that the juvenile court erred for three reasons. We are not persuaded.

¶ 15　First, mother contends that the juvenile court erred by entering an APR because she "expects that father will certify the present APR order as a foreign order to Texas," which will place additional burdens on her to modify the APR in the future. But she never raised this assertion in the juvenile court. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14. Nor does she provide any legal authority to support her position on appeal. *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (appellate courts do not address undeveloped arguments). And in any event, her claim is highly speculative, *see DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo. App. 2006) (appellate court do not address "uncertain or contingent future matters"), and focused on her custodial interests rather than the child's best interests, *see H.K.W.*, ¶ 13.

¶ 16　Second, mother argues that the juvenile court erred because her ability to modify the APR is dependent upon her relationship with maternal grandmother and the child's relationship with maternal grandmother. Mother notes that, the child's counsel for youth (CFY) argued in closing that maternal grandmother could be mother's "lifeline" to the child. However, mother argues that this

may be difficult because of the strained relationship between the parties. Although the child's CFY may have believed that maternal grandmother could act as an intermediary between mother and the child, the court made no such findings. In fact, the court prohibited any contact with mother, including "third party contact." Ultimately, mother's argument fails because she does not have to "demonstrate change" to the child to modify the APR; rather, she needs to demonstrate it to a domestic relations court. *See People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005) (noting that a court must make decisions about parenting time and cannot delegate parenting time decisions to others); *see also* § 14-10-129, C.R.S. 2024 (describing the procedure for modifications of parenting time orders).

¶ 17    Finally, mother maintains that the juvenile court erred because she made some progress during the case. To be sure, the record shows that mother had begun treatment a few months before the APR hearing and that she had demonstrated some minimal change. However, the court considered and weighed this evidence, and it still determined that an APR to father was in the child's best interests. Because the record supports this decision, we cannot

9

reweigh the evidence or substitute our judgment for that of the juvenile court.  *See B.R.D.*, ¶ 15; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

### III.  Disposition

¶ 18    The judgment is affirmed.

JUDGE FREYRE and JUDGE LUM concur.