24CA1964 Peo in Interest of AR 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1964
Pueblo County District Court No. 23JV30349
Honorable William D. Alexander, Judge

The People of the State of Colorado,

Petitioner,

In the Interest of A.R., a Child,

and Concerning C.G.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner

Jenna L. Mazzucca, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     C.G. (mother) appeals the judgment terminating her parent-child legal relationship with A.R. (the child).  Her sole argument is that the juvenile court deprived her of "fundamentally fair procedures" by ordering that all urinalysis testing (UA) occur at one specific facility and by repeatedly ordering same-day UAs despite her difficulties providing them as ordered.  We reject mother's contention because she (1) did not preserve this issue for appeal and (2) is not entitled to relief under the miscarriage of justice exception to the preservation rule.  We therefore affirm the judgment.

## I.     Background

¶ 2     The Pueblo County Department of Human Services filed a petition in dependency or neglect because the then-newborn child tested positive for methamphetamine and fentanyl.  Mother admitted the allegations in the petition, and the juvenile court adjudicated the child dependent and neglected and adopted a treatment plan.

¶ 3     The treatment plan required mother to, among other things, (1) submit three UAs per month; and (2) engage in treatment at Crossroads or an alternative treatment facility.  The treatment plan

did not specify where mother was to take UAs, but the court later stated, "I really need the UAs done at Intervention."

¶ 4    Four months after adjudication, the Department moved to terminate mother's parental rights. Two months later, the juvenile court held a two-day termination hearing. At the end of each day, after hearing testimony that mother had not submitted any UAs during the pendency of the case, the court ordered mother to submit to same-day UAs. Additionally, at the end of the second day, the court also ordered hair follicle testing and held the proceeding in abeyance to await the results.

¶ 5    The court then terminated mother's parental rights to the child. This decision was based, in part, on a hair follicle test that showed that mother was "using a variety of controlled substances." The court also found that the treatment plan required mother to complete UAs but that "mother didn't do any of them." The court concluded that there were "compliance issues throughout this case" and that mother did not do "anything that was required."

## II.    Preservation

¶ 6    In dependency and neglect proceedings, appellate courts will not consider issues that were not preserved in the juvenile court.

*See People in Interest of M.B.*, 2020 COA 13, ¶ 14. To preserve an issue for appeal, a party must present the court with "adequate opportunity to make findings of fact and conclusions of law on [the] issue." *Forgette v. People*, 2023 CO 4, ¶ 21 (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004)).

¶ 7 Mother concedes that her argument on appeal — that the juvenile court deprived her of "fundamentally fair procedures" by ordering the same-day UAs taken at one specific facility — is not preserved. However, she urges us to apply the miscarriage of justice exception to preservation.

### III. Miscarriage of Justice Exception

¶ 8 In limited circumstances, an appellate court may exercise its discretion to address an unpreserved issue on appeal to avoid a miscarriage of justice. *People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996); *see also M.B.*, ¶ 21 ("[G]iven the constitutional nature of parental rights, we will recognize a miscarriage of justice exception for review of unpreserved errors."). The miscarriage of justice exception has a high bar and a narrow scope, applying only to limited situations in which an error by the juvenile court, not otherwise properly preserved for appeal, results in a grossly unfair

3

outcome for the parent. *M.B.*, ¶¶ 23-24; *A.E.*, 914 P.2d at 539. *But see People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21 n.1 (declining to apply miscarriage of justice exception where issue was "inherently fact-dependent," and mother failed to develop the requisite record).

¶ 9    Mother has not demonstrated that the juvenile court's termination judgment resulted in a grossly unfair outcome. She argues that "[b]y the court repeatedly disregarding known issues [with UAs], [she] was subjected to an unfair and unreasonable process that infringed on the basic fairness of the termination proceedings guaranteed to her by the Fifth Amendment." Specifically, she contends that "the trial court heavily based its termination order on the parents' compliance with urinalysis testing." But the challenged UAs had no apparent impact on the court's termination judgment. *See People in Interest of E.B.*, 2022 CO 55, ¶ 17 (a parent cannot prevail on a due process claim absent a showing of harm or prejudice); *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007) ("A parent may not obtain relief on a due process claim absent a showing of harm or prejudice.").

¶ 10      In its written order, the court explained that "[t]ermination of parental rights was held in abeyance, pending the results of *hair follicle* testing," not pending the results of the challenged UAs. (Emphasis added.)  Mother submitted to hair follicle testing and tested positive for amphetamine, methamphetamine, fentanyl, and methadone.  The juvenile court based its oral ruling, in part, on this positive test.  While it is true that the court also found that mother did not take any UAs, this referred to UAs required by the treatment plan, not the UAs separately ordered at the termination hearing which mother now challenges.  And her claim that "[h]ad she been subjected to a fair process this entire case may have unfolded differently" is speculative.  *See DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo. App. 2006) (appellate court do not address "uncertain or contingent future matters").

¶ 11      Even if we accept mother's argument that she experienced difficulties in submitting UAs as ordered, she fails to explain how the UA orders deprived her of due process.  Due process entitles parents to "fundamentally fair procedures" before their parental rights are terminated.  *E.B.*, ¶ 16 (citation omitted).  This principle requires that a parent be provided with "notice of the allegations in

the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 18. Mother does not assert that the juvenile court failed to provide her with these procedures, and she has not identified any additional procedural protections that were necessary to satisfy due process under the circumstances presented here.

¶ 12  Based on the foregoing, we decline to address mother's claim for the first time on appeal.

## IV.  Disposition

¶ 13  We affirm the judgment.

JUDGE J. JONES and JUDGE BROWN concur.