The PEOPLE of the State of Colorado, In the Interest of A.M.K. a Child,

Upon the Petition of Billy W. Hargrove and Sherry L. Hargove, Petitioners and Special Respondents–Appellees,

and Concerning Jeff Lewis, Respondent–Appellant.

No. 02CA0178.

Colorado Court of Appeals, Div. I.

Feb. 27, 2003.

Larry N. Harris, Littleton, Colorado, for Petitioner.

Law Office of Richard K. Rufner, Richard K. Rufner, Englewood, Colorado, for Respondent–Appellant.

Opinion by Judge GRAHAM.

In this proceeding concerning the allocation of parental responsibilities for A.M.K., Jeff Lewis (father) appeals from the trial court's order awarding primary residential care to Billy W. and Sherry L. Hargrove (petitioners). Father also appeals from the order insofar as it awards petitioners shared decision-making authority for religious, medical, and day-to-day matters and sole decision-making authority for education issues. We reverse and remand for further proceedings.

Petitioners initiated this proceeding pursuant to § 14–10–123, C.R.S.2002, seeking a permanent allocation of parental responsibilities for A.M.K., who was born April 13, 1996. A.M.K.'s biological parents were unmarried teenagers at the time of her birth, and father had little contact with the child after her first few months of life. A.M.K.'s mother met petitioners through their daughter, mother's coworker. When A.M.K. was still an infant, petitioners offered to provide babysitting for her, which soon turned into a full-time living arrangement. Although A.M.K.'s mother maintained contact, it was sporadic.

Mother testified that she did not tell father of this arrangement because she was embarrassed. Father denied having any knowledge of petitioners or any care arrangement with them until shortly before this action was commenced. In fact, during father's absence from Colorado, he paid child support directly to mother.

Shortly before this proceeding was commenced, petitioners contacted A.M.K.'s mother to request that they be permitted to adopt A.M.K. Mother told petitioners she would think about it, but then contacted father and expressed her desire that he and his fiancee assume full care and responsibility of A.M.K. Father then moved back to Colorado to re-

trieve the child. He began exercising parenting time with A.M.K., who was then temporarily with mother. Father was prevented from removing the child from Colorado and returning to his home in Delaware by a series of events, which culminated in this petition seeking allocation of parental responsibilities.

Following an evidentiary hearing, the trial court determined that petitioners had standing to pursue parental responsibility of A.M.K. under § 14–10–123(1)(b) and (c), C.R.S.2002, by virtue of their physical custody of her. The trial court found that A.M.K. had been permanently residing with petitioners since before she turned one and that they had become her "psychological parents." The court specifically noted A.M.K.'s attachment to petitioners and concluded that a separation from them would be emotionally damaging. The court further found that petitioners had done a good job of parenting A.M.K. and that she appeared normal, healthy, and well adjusted.

Father's fitness was not in issue for purposes of the § 14–10–123(1) proceeding, and so the dispute concerning allocation of parental responsibilities was between father as a fit biological parent and petitioners as "psychological parents."

The trial court applied the best interests standard in ruling that the child should reside primarily with petitioners and awarded them various parental responsibilities. It also granted father increasing parenting time consistent with a special advocate's proposed schedule.

### I. Father's Fundamental Right

Father contends that the trial court ignored his fundamental right as a biological parent to direct the custody, care, and control of the child. According to father, absent a showing of his unfitness, the court erred in applying the best interests of the child standard in determining that parental control should reside with petitioners. We agree that father's fundamental rights should have been protected by the application of a presumption, but reject father's contention that a showing of unfitness was required before

parental responsibilities could be allocated to petitioners.

As relevant here, § 14–10–123 grants standing to persons other than parents to seek allocation of parental responsibilities if they have had physical care of the child for a period of six months or more and if they commence their petition within six months of the termination of such care.

Allocations of parental responsibilities are to be made according to the best interests standard pursuant to § 14–10–123.4, C.R.S.2002. The allocation of parental responsibility is a matter lying within the sound discretion of the trial court. *In re Marriage of Zebedee*, 778 P.2d 694 (Colo.App. 1988).

In applying the best interests standard, a court cannot ignore the presumption accorded to biological parents. The supreme court in *In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995), considered whether the best interests standard could be applied in resolving a custodial dispute between a natural parent and psychological parents pursuant to § 14–10–123 without a showing of parental unfitness. The court found that the best interests standard was the proper standard and that fitness of the natural parent need not be resolved as part of the allocation process. In so finding, the court recognized the "presumption that the biological parent has a first and prior right to custody." *In re Custody of C.C.R.S., supra*, 892 P.2d at 256.

Subsequent Colorado appellate opinions have confirmed that "natural parents have a fundamental liberty interest in the companionship, care, custody, and management of their children." *In re Petition of J.D.K.*, 37 P.3d 541, 543 (Colo.App.2001); *see L.L. v. People*, 10 P.3d 1271 (Colo.2000). This fundamental liberty interest gives rise to a presumption that the best interests of the child will be furthered by a fit natural parent. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

In determining the best interests of the child, the court must consider the factors enumerated in § 14–10–124(1.5), C.R.S.2002, as well as all other relevant factors. *In re*

*Marriage of Martin,* 42 P.3d 75 (Colo.App. 2002). The trial court need not make specific findings on each and every factor listed in the statute so long as there is some indication in the record that the pertinent factors were considered. *In re Marriage of Garst,* 955 P.2d 1056 (Colo.App.1998). However, the trial court must accord a presumption to the fit biological parent that in the first instance, the best interests of the child will be satisfied by placing the child with the biological parent. *See In re Custody of C.C.R.S., supra.*

Here, although the court made numerous findings regarding father, his sporadic contact with the child, and his general historical lack of interest, the record is devoid of any indication that father was accorded a presumption in applying the best interests standard. Indeed, the record reflects that the trial court found that the recommendations of an expert report were in the best interests of the child and adopted those recommendations almost entirely without applying any presumption in favor of father. In effect, the court placed the burden on father to rebut an opposite presumption in favor of petitioners.

Additionally, the court-appointed special advocate noted in his report that father's life was "just beginning to take hold" and that it appeared his relationship with his fiancee was a "centering force." However, in pointing out the ages of father and his fiancee, their living arrangement with his parents, the uncertainty of their finances, father's need to complete his education to realize his goals, and father's past difficulties with commitment, the special advocate cautioned that A.M.K. should not be placed in a secondary role to father's character formation. The special advocate recommended, therefore, that the allocation of parental responsibilities be based in significant part upon the appropriate timing for an introduction of A.M.K. more fully into father's life.

This analysis wholly fails to accord a presumption that the best interests of the child would be served by custody with the fit biological father. In fact, even though fitness obviously was not an issue in the proceeding, the trial court took special care to state that it was not finding father to be "unfit ... [although] the Court does find that he has been an unfit parent previously." This observation indicates that no special weight was given to father as a fit biological parent, which under these circumstances constitutes error.

We conclude that a new hearing should be afforded at which the parties have an opportunity to present additional evidence and argument relating to the presumption, the rebuttal thereof, and such constitutional matters as might be suggested in part II of this opinion.

## II. Compelling State Interest

Father also argues that he has a constitutional right to have custody, care, and control of his child and that he cannot be deprived of that right in the absence of a compelling state interest shown by clear and convincing evidence. We decline to reach this issue.

Father's contention necessarily involves an analysis of the constitutional questions raised by depriving a fit natural parent of his or her fundamental liberty interest pursuant to § 14–10–123(1)(b) and (c), as well as the continuing vitality of *In re Custody of C.C.R.S., supra,* in light of *Troxel, supra.* Father acknowledges that he has not notified the attorney general of a facial challenge to the constitutionality of § 14–10–123, as is required under § 13–51–115, C.R.S.2002, C.R.C.P. 57(j), and C.A.R. 44(a). Consequently, he concedes that we are not able to review the statute on that basis. *See In re Estate of Becker,* 32 P.3d 557 (Colo.App. 2000), *aff'd sub nom. In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

On remand, father should have the opportunity to raise, and petitioners to respond to, constitutional objections. To the extent those objections include a facial challenge to the applicable statutes, proper notice should be given to the attorney general.

The order is reversed, and the case is remanded to the trial court for further proceedings consistent herewith.

Judge JONES concurs.

Judge VOGT specially concurs.

Judge VOGT specially concurring.

I agree that the case must be remanded because the trial court's order does not reflect that it considered the presumption in favor of the biological father when it allocated parental responsibilities for A.M.K.

I write separately, however, to emphasize that this presumption is rebuttable. In *In re Custody of C.C.R.S.*, 892 P.2d 246, 256 (Colo. 1995), the supreme court stated: "This presumption [that the biological parent has a first and prior right to custody] may be rebutted by evidence establishing that the welfare of the child—i.e., the best interests of the child—is better served by granting custody to a non-parent." I perceive nothing in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), that would warrant a conclusion that that statement by our supreme court is no longer good law, or that would preclude the trial court on remand from determining, based on the evidence previously presented, that the presumption has been rebutted.