24CA0858 Peo in Interest of AQO 01-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0858
Boulder County District Court No. 22JV30115
Honorable Dea M. Lindsey, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.Q.O., a Child,

and Concerning D.Q.,

Appellant

and

S.O.,

Appellee.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

---

Ben Pearlman, County Attorney, Cheryl Koh-Sicotte, Assistant County
Attorney, Boulder County, Colorado, for Appellee The People of the State of
Colorado

Alison A. Bettenberg, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee S.O.

¶ 1    D.Q. (mother) appeals the judgment allocating parental responsibilities for A.Q.O. (the child) to S.O. (father). We affirm.

I.    Background

¶ 2    The Boulder County Department of Housing and Human Services (Department) filed a petition in dependency and neglect alleging concerns about mother's mental health, potential substance abuse, and physical abuse. At the time of the petition, father was incarcerated. The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents.

¶ 3    The child was initially placed into foster care. After father had been released from custody and successfully completed his treatment plan, the child was returned to his care. Father later moved for an allocation of parental responsibilities (APR).

¶ 4    Following an evidentiary hearing, the juvenile court allocated father sole decision-making responsibility for and primary residential custody of the child. The court allocated mother therapeutically supervised parenting time. The court ordered mother to actively participate and engage in mental health therapy and substance abuse treatment "until successfully discharged" by

her providers.  The court also ordered that "when mother is ready" to move from therapeutically supervised parenting time, she may petition the court to modify the APR.  The court certified the APR order into a domestic relations case and closed the dependency and neglect case.

## II.　Mother's Argument

¶ 5　Mother contends that the juvenile court abused its discretion by failing to enter a detailed "step-up" plan to expand her parenting time.  We disagree.

## A.　Applicable Law

¶ 6　When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the purposes of the Children's Code articulated in section 19-1-102, C.R.S. 2024.  *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).  Ultimately, the court must allocate parental responsibilities in accordance with a child's best interests.  *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996).

¶ 7　An APR is within the juvenile court's discretion, and we will not disturb its determination if competent evidence supports it.  *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003).  A

court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People in Interest of M.H-K.*, 2018 COA 178, ¶ 60.

¶ 8    The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the juvenile court's discretion. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

### B.    Analysis

¶ 9    As an initial matter, we note that mother did not preserve this contention for appellate review. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[L]ike other civil actions, dependency and neglect proceedings are subject to the limitation that except where jurisdiction is implicated, generally appellate courts review only issues presented to and ruled on by the lower court."). Mother concedes that she did not preserve this issue but asks us to review her claim to avoid a miscarriage of justice.

¶ 10    In limited circumstances, an appellate court may exercise its discretion to address an unpreserved issue on appeal. *See People in Interest of A.E.*, 914 P.2d 534, 539 (Colo. App. 1996).  Divisions of this court have recognized a narrow "miscarriage of justice" exception to review some unpreserved claims of error in a dependency and neglect proceeding.  *See M.B.*, ¶ 21 ("[G]iven the constitutional nature of parental rights, we will recognize a miscarriage of justice exception for review of unpreserved errors."). However, unlike the judgment on appeal in *M.B.*, the APR order here did not terminate mother's parental rights.  And mother does not persuasively explain why this case constitutes the rare situation where addressing an unpreserved claim is necessary to prevent a miscarriage of justice.  *See id.* at ¶¶ 19-21.

¶ 11    Even if mother had preserved this contention, however, we conclude that the juvenile court did not err by declining to enter a detailed step-up parenting plan and instead allowing mother to petition the domestic relations court to increase her parenting time whenever she "is ready."  To be sure, the court considered a proposed step-up parenting plan that contained concrete milestones mother had to reach before she could petition to expand

her parenting time. But given mother's historical difficulty complying with her treatment plan, the court rejected the proposed step-up plan. The court did not "feel comfortable" ordering the step-up plan because the terms were "highly burdensome if not impossible for [mother] to complete." The record supports the court's findings.

¶ 12    The caseworker had concerns about entering a step-up parenting plan that set a concrete number of days for mother to engage in mental health treatment or maintain sobriety. Because mother had not engaged in mental health treatment or substance use treatment throughout the case, the caseworker believed that the number of days required would depend on mother's "dedication and engagement and active participation" in treatment and that any recommendations should come from a mental health therapist. The caseworker also believed it would be difficult for mother to fully understand what would be required by the proposed step-up plan and that it would be easier for mother to simply return to court when she was ready to change supervision levels. The court found the caseworker's testimony credible. *A.M.*, ¶ 15.

¶ 13　Because the court determined that a detailed step-up plan would present too many obstacles for mother to achieve increased parenting time, we cannot say it abused its discretion by declining to impose the more onerous proposed conditions. On the contrary, we view the court's order as giving mother a more liberal opportunity to move the domestic relations court to increase her parenting time than if it had ordered the proposed step-up plan.

¶ 14　We also reject mother's contention that the APR order was too vague because it did not put mother on notice of what she needed to accomplish to expand her parenting time. Any motion to modify the allocation of parenting time would be governed by the standards set forth in sections 14-10-124 and 14-10-129, C.R.S. 2024. Mother cites no authority, and we are not aware of any, that requires the court to articulate a more specific standard by which mother's request for increased parenting time would be judged.

¶ 15　In the end, we see no reason to disturb the APR order.

### III.　Disposition

¶ 16　The judgment is affirmed.

JUDGE J. JONES and JUDGE YUN concur.