24CA1472 Peo in Interest of EP 04-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1472
Weld County District Court No. 23JV67
Honorable W. Troy Hause, Judge

The People of the State of Colorado,

Petitioner,

In the Interest of E.P. and I.P., Children,

and Concerning F.P.,

Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 10, 2025

No appearance for Petitioner

Jenna L. Mazzucca, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant

¶ 1     In this dependency and neglect proceeding, F.P. (father) appeals the judgment allocating parental responsibilities for E.P. and I.P. (the children) to M.H. (mother).  We affirm.

## I.    Background

¶ 2     The Weld County Department of Human Services (Department) filed a petition in dependency and neglect alleging an extensive history of domestic violence and reported instances of child sexual abuse by father.  The juvenile court adjudicated the children dependent and neglected and adopted treatment plans for the parents.

¶ 3     Later, the court ordered the children, who had been placed with kin, to be returned to mother's care and custody.  Six months after the court adopted father's treatment plan, father became incarcerated.  Mother then moved for an allocation of parental responsibilities (APR).

¶ 4     After the APR hearing, the court designated mother the primary custodial parent and ordered that she have sole decision-making responsibility.  The court did not grant father parenting time for several reasons, including a criminal protection order prohibiting him from having contact with the children.

## II. Applicable Law and Standard of Review

¶ 5 When entering an APR in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *Id.* at ¶ 19. Thus, the court must allocate parental responsibilities in accordance with the child's best interests. *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see also People in Interest of H.K.W.*, 2017 COA 70, ¶ 13 (while the court may consider the factors listed in the Uniform Dissolution of Marriage Act, section 14-10-124(1.5)(a), C.R.S. 2024, the focus must be on the protection and safety of the child and not the parents' custodial interests).

¶ 6 An APR is within the sound discretion of the juvenile court and will not be disturbed on review if competent evidence supports the judgment. *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003). It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the

evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). But we review de novo whether the court applied the correct legal standard in allocating parental responsibilities. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

### III. Discussion

### A. Reasonable Efforts

¶ 7        Father principally argues that the juvenile court erred when it did not grant him any parenting time because the Department did not make reasonable efforts to reunite him with the children. We reject this contention.

### 1. Preservation

¶ 8        The guardian ad litem argues that father failed to preserve this issue for review because he did not first raise it to the juvenile court. However, even assuming father's argument was preserved, we reject it.

### 2. Analysis

¶ 9        A department must make reasonable efforts to rehabilitate parents and reunite families following the placement of abused or neglected children out of the home. §§ 19-1-103(114), 19-3-100.5,

19-3-208(1), 19-3-604(2)(h), C.R.S. 2024. Reasonable efforts "means the exercise of diligence and care . . . for children . . . who are in[, or at imminent risk of being placed in,] foster care or out-of-home placement." § 19-1-103(114). But the children were not in out-of-home placement when the court entered the APR judgment; rather, mother had custody of the children. *See* § 19-1-103(107) (placement out of the home means placement in a home or center operated or licensed by the Department of Human Services).

¶ 10    In addition, the juvenile court allocated parental responsibilities between parents, not to a nonparent. *Cf. People in Interest of A.S.L.*, 2022 COA 146, ¶ 20 (the court is required to consider reasonable efforts when it enters an APR to a nonparent). Accordingly, the court was not required to consider whether the Department made reasonable efforts or make reasonable efforts findings as part of the APR judgment. *Cf. id.*; § 19-3-604(2)(h) (termination statute providing that, in deciding whether a parent is unfit, the court "shall consider," among other things, whether "[r]easonable efforts by child-caring agencies . . . have been unable to rehabilitate the parent or parents"). Instead, as outlined above,

the court had to allocate parental responsibilities in accordance with the children's best interests. *L.B.*, 254 P.3d at 1208.

¶ 11     We are also not persuaded by father's argument that the Department's efforts were deficient because it failed to comply with sections 17-42-105(3)(b), 19-1-131, and 19-3-508(1)(e)(I), C.R.S. 2024. Father's reliance on these authorities is misplaced.

¶ 12     Section 17-42-105(3) provides that the department of *corrections*, not the Department here, shall ensure that children and parents who are incarcerated "have access to opportunities that facilitate continued relationships." *See* § 17-1-102(2), C.R.S. 2024 (defining the "Department" for purposes of Title 17 as the department of corrections). Section 19-1-131 provides that the state department of human services, not the Department here, shall "promulgate rules" to facilitate communication and family time between children and their parents who are incarcerated. *See* § 19-1-103(53) (defining the "Department" for purposes of Title 19 as the state department of human services). And section 19-3-508(1)(e)(I) does not apply when a parent becomes continuously incarcerated *after* the dispositional hearing, which

was the case here. *Compare* § 19-3-508(1)(e)(I) *with* § 19-3-508(1)(e)(III).

¶ 13    Even assuming father intended to cite section 19-3-508(1)(e)(III) (and assuming the court was required to consider whether the Department made reasonable efforts as part of the APR judgment, something we have already concluded the court was not required to do) we would still disagree with father's argument. Subsection (1)(e)(III) provides that "[i]f, after the dispositional hearing," a parent becomes continuously incarcerated for more than thirty-five days, then the caseworker, upon knowledge of the incarceration "shall provide information that details the services and treatment available to a parent at the facility or jail . . . or the caseworker's efforts to obtain the information at the next scheduled court hearing." § 19-3-508(1)(e)(III). The next scheduled court hearing was the APR hearing. At that hearing, the caseworker testified that her understanding was that there were not services available to father at the jail in which he was incarcerated at the time of the hearing and that the Department had been making "an ongoing effort" to "mak[e] contact and hav[e] a direct person at each

6

jail . . . in the state to be able to coordinate around what services are available to the parents." Thus, the Department complied.

## B. Parenting Time

¶ 14    To the extent father argues that the juvenile court erred because it "could have" awarded him parenting time in anticipation of a future modification of the criminal protection order, we are not persuaded.

¶ 15    The court determined that allocating all parenting time to mother was in the children's best interests. In doing so, the court found that father was incarcerated at the time of the APR hearing and prohibited from having contact with the children because of a criminal protection order. And although the court was not required to find that father was unfit to enter the APR to mother, it made such a finding because, among other reasons, father had not progressed on his treatment plan.

¶ 16    The record supports the court's findings. The caseworker testified that

- at the time of the APR hearing, father was incarcerated and could not have contact with the children because of a criminal protection order;

7

- father's contact with the children was limited or prohibited for periods throughout the case because of multiple criminal protection orders;

- father did not fully engage with services;

- father failed to sign required releases of information; and

- a counseling provider had concerns about father's honesty during sessions.

Moreover, the caseworker opined that father needed to address various issues to complete his treatment plan including "concerns of violence as well as the sexual abuse and boundary concerns that led to the filing of this case."

¶ 17    The court reasoned,

> It's clear that father cannot have parenting time until the protection order is modified . . . and the father does need to make an effort to build an attachment and re-establish a relationship with the children once he can safely have contact again.
>
> Obviously, I have no idea when that is going to occur.  What I expect is that there would be a motion filed by either party in the [domestic relations] case, [that] outlines if he was convicted, how long has it been since he has seen the children, what is the status of the relationship.

8

> At that point in time the Court [could] order unsupervised contact, supervised contact or possibly therapeutic contact [but] for me to decide that today is completely speculative. I have not a clue . . . [w]hat is going to happen in [father's criminal] cases.

¶ 18   In sum, the court determined, with record support, that allocating all parenting time to mother was in the children's best interests based on the circumstances existing at the time of the hearing, including father's unfitness and inability to have any contact with them. *See N.G.G.*, ¶ 29 (the court's determination of a child's best interests must be based on circumstances existing at the time of the proceeding). On this record, we conclude that the court did not abuse its discretion by declining to fashion a parenting time plan in anticipation of a speculative future event. *See A.M.K.*, 68 P.3d at 565.

## IV.   Disposition

¶ 19   The judgment is affirmed.

JUDGE J. JONES and JUDGE YUN concur.