24CA1664 Peo in Interest of AM 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1664
Weld County District Court No. 23JV8
Honorable Timothy Kerns, Judge

The People of the State of Colorado,

Petitioner,

In the Interest of A.M., a Child,

and Concerning T.S. a/k/a T.D.,

Appellant,

and

J.M.,

Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Bruce T. Barker, County Attorney, Tate S. Costin, Assistant County Attorney, Greely, Colorado, for Petitioner

Jennifer Clegern, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

Weibel, Zacheis & Greenfield, LLC, Lisa D. Harbour Weibel, Greely, Colorado, for Appellee

¶ 1    T.S. (mother) appeals the judgment allocating parental responsibilities for A.M. (the child) to J.M. (father). We affirm.

## I.    Background

¶ 2    In 2019, the Weld County Department of Human Services (the Department) received a referral expressing concerns about substance abuse and domestic violence in mother's home. The Department filed a petition in dependency or neglect and, ultimately, the case was closed with an allocation of parental responsibilities (APR) for the child, under which father was designated the child's primary residential custodian for educational purposes and mother was granted parenting time.

¶ 3    Three years later, the Department received a new referral alleging similar concerns. Emergency protective custody was granted to the Department, the child remained placed in father's home, and the Department filed a petition in dependency or neglect.

¶ 4    The juvenile court adjudicated the child dependent and neglected. The court then adopted treatment plans that required the parents, among other things, to demonstrate stability in their living situations and an ability to provide for the child. Mother's treatment plan also required her to address her substance use,

mental health, and parenting skills to ensure the child's needs would be met. The child remained in father's care throughout the dependency and neglect proceeding.

¶ 5 Mother moved to modify the prior APR order, requesting that she become the child's primary residential custodian for educational purposes. Following a hearing, the juvenile court denied mother's request and maintained father as the child's primary residential custodian. The court then certified the order and transferred it into the parents' existing domestic relations case.

## II. Discussion

¶ 6 Mother asserts the juvenile court abused its discretion in awarding father primary residential custody because (1) the court focused on father's custodial interests, rather than the child's best interests as the Children's Code required, even though mother had demonstrated safety and stability and the child's younger sibling resided in mother's home; (2) the order was contrary to the guardian ad litem's (GAL) recommendation; and (3) the order was contrary to the child's wishes. We aren't persuaded.

## A. Applicable Law and Standard of Review

¶ 7 The Children's Code authorizes a juvenile court to enter an APR order when it maintains jurisdiction in a case involving a dependent and neglected child. § 19-1-104(1)(c), (5)-(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.

¶ 8 When allocating parental responsibilities under the Children's Code, the court must consider the legislative purposes of section 19-1-102, C.R.S. 2024. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005). The overriding purpose of the Children's Code is to protect a child's safety and welfare by providing procedures to serve the child's best interests. *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995). When allocating parental responsibilities, the juvenile court may also consider the best interest factors set forth in section 14-10-124, C.R.S. 2024, *see People in Interest of H.K.W.*, 2017 COA 70, ¶ 16, but the court's focus must be on the protection and safety of the child, and not the "custodial interest" of the parents, *People in Interest of M.D.*, 2014 COA 121, ¶ 12.

¶ 9 An APR order is within the juvenile court's discretion and will not be disturbed on review if the judgment is supported by

competent evidence in the record. *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003). We won't set aside a juvenile court's factual findings unless they are "so clearly erroneous as to find no support in the record." *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). The juvenile court, as trier of fact, determines the credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

## B. Analysis

### 1. Mother's Home

¶ 10    Mother asserts she is a safe and stable parent and references nine separate Department referrals for father's household. To the extent mother contends that father is unfit or a danger to the child, such that the court abused its discretion by designating his home as the child's primary residence, the evidence does not support that contention. The juvenile court found, with record support, that both parents successfully complied with their treatment plans. The court commended mother for her significant efforts to address her substance abuse and the domestic violence dynamics in her

4

household.  Additionally, the court found there were no imminent safety concerns with either parent.  The caseworker recognized there were referrals for father's home, but none were founded, none resulted in changes to father's treatment plan, and the child did not corroborate the reported concerns.

¶ 11     Citing H.B. 19-1288 — the "Foster Youth Siblings Bill of Rights" — which is codified at sections 19-7-201 to -204, C.R.S. 2024, mother also asserts the court erred by not considering the legislature's intent to keep siblings together.  *See* § 19-7-202(1) ("The general assembly finds and declares that it is beneficial for *a youth placed in foster care* to be able to continue relationships with the youth's siblings, regardless of age, so that siblings may share their strengths and association in their everyday and often common experiences.") (emphasis added).  But this statute is inapplicable because the child wasn't in foster care.  Regardless, the court considered the child's relationship with her siblings.  The court specifically found the child "has significant relationships in each side of the family," referencing her healthy relationship with her younger sibling at mother's house.

¶ 12 The juvenile court noted that its primary consideration in determining an APR was the child's best interests relative to her schooling, and found that "compelling a transition" for the child would not be in her best interests. In making this finding, the court referenced the child's "substantial" educational success, the length of time she had been established in her community, her community of friends transitioning with her to middle school, and her significant relationship with her mental health provider, all of which the child had developed and maintained while residing with father.

¶ 13 Father provided detailed testimony regarding the child's advancement at school, including her year-end progress report, reading growth, attendance records, and scholastic certificates. Father testified that the child would transition to middle school with several friends, had completed the school's orientation, and was excited about her new school. It was undisputed that the child had resided in father's home for several years and had the same doctor and dentist during that time. Father also testified regarding the child's year-long relationship with her therapist who was found through the school.

¶ 14	While the juvenile court considered the factors in section 14-10-124, it made clear that it was guided by the overarching goals of the Children's Code in determining an APR order that was in the child's best interests.  The court determined it was in the child's best interests (1) to remain in father's primary care during the school year; (2) for mother to have three weekends per month during the school year; and (3) for the parties to equally divide summer parenting time and share holiday time.

¶ 15	The parties' lack of physical proximity was a key issue.  The court posited that, if there was less geographical distance between the parties, it would have equally divided parenting time during the school year.  Thus, the grant of primary residential custody to father was not because he was more fit than mother or because the court was focused on father's custodial interests.  Rather, there had to be a primary parent for geographic reasons.  Given all of the circumstances, the court found it was best for father to be the primary caregiver considering the child's stability with him and her school and community ties.  Because the record supports this decision, we cannot reweigh the evidence or substitute our judgment for that of the juvenile court.  *See People in Interest of*

*S.Z.S.*, 2022 COA 133, ¶ 29 (recognizing that we may not reweigh the court's resolution of conflicting evidence).

### 2. GAL's Recommendations

¶ 16    Mother asserts the GAL agreed it was in the child's best interests to reside with mother during the school year. Thus, she argues, the juvenile court should have followed the GAL's recommendations. But the court is not bound by a GAL's recommendations; indeed, the GAL was not necessarily required to make a recommendation regarding the specifics of an APR order. *See* § 19-3-203(5), C.R.S. 2024 (describing the duties of a GAL); *People in Interest of M.W.*, 796 P.2d 66, 68 (Colo. App. 1990) (noting that a GAL is not required to make recommendations on matters not identified in statute); *see also In re Marriage of McNamara*, 962 P.2d 330, 334 (Colo. App. 1998) ("The trial court was free to reach its own conclusions and was not required to follow the recommendation of the evaluator."). And when a GAL presents recommendations based on evidence from other sources, those recommendations are analogous to arguments made by counsel. *People in Interest of J.E.B.*, 854 P.2d 1372, 1375 (Colo. App. 1993); *see also City of Fountain v. Gast,* 904 P.2d 478, 482 n.5 (Colo. 1995)

8

("[A]rguments of counsel, of course, are not evidence."). Accordingly, we discern no error in the court's decision not to follow the GAL's APR recommendations.

### 3. Child's Wishes

¶ 17 Next, mother argues that the child wished to reside with her during the school year. *See H.K.W.*, ¶ 16 (trial court may consider a child's separately stated wishes when deciding how to allocate parental responsibilities in a dependency and neglect case). The court recognized the child's desire to reside with mother; however, the court did not believe the child to be sufficiently mature to express reasoned and independent preferences. The court found that "mutual denigration" had been part of the child's environment in both households, which impacted the weight the court gave the child's wishes. The court also questioned whether the child's wishes were driven by a desire to avoid discipline and structure, noting that the evidence demonstrated that father's household was more "administrative" than mother's. The court's findings were supported by the caseworker's testimony regarding the child's tendency to tell the parents what they wanted to hear. The caseworker also observed that the child's reasons for wanting to live

9

with mother were inconsistent. While the Department ultimately didn't take a position on the issue of primary residence, the caseworker indicated the child's wishes didn't account for other factors, such as father's consistency and capability to care for her. *See S.Z.S.*, ¶ 29.

¶ 18 Because the record supports the court's decision to allocate primary residential custody to father, we decline to disturb it. *See A.M.K.*, 68 P.3d at 565.

### III.   Disposition

¶ 19 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.