25CA0856 Marriage of McConnell 03-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0856
Ouray County District Court No. 16DR30001
Honorable D. Cory Jackson, Judge

In re the Marriage of

Sarah Lou Smedsrud,

Appellee,

and

Porter Williams McConnell,

Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 26, 2026

Hogan Omidi, P.C., Erin A. Penrod, Denver, Colorado, for Appellee

Price Family Law, LLC, Trista Price, Denver, Colorado, for Appellant

¶ 1 In this post-dissolution of marriage proceeding, Porter Williams McConnell (father) appeals the district court's order denying his relocation motion and modifying child support. We affirm the district court's order denying father's request to relocate the children, but we reverse the order to the extent that it did not determine a new parenting time plan and modified child support based on the parents' current equal parenting time schedule. We remand the case for the court to enter a parenting time order that can be exercised with father in Kentucky and mother in Colorado and to enter a new child support order based on the updated parenting time allocation.

## I. Background

¶ 2 Father and Sarah Lou Smedsrud (mother) share two children, S.M. and P.L.M. In 2017, the court dissolved the parties' marriage and adopted their stipulated parenting plan. Under the plan, the parents shared equal parenting time on a week-on/week-off schedule, and joint decision-making responsibility.

¶ 3 In November 2023, father sought an order allowing him to relocate with the children to Kentucky and requested the court modify decision-making responsibility and child support. Mother

opposed relocation.  The court appointed a child and family investigator (CFI) to make recommendations concerning relocation.

¶ 4  The court held a hearing over a day and a half.  The court found, and father testified, that he had moved to Kentucky roughly a year before the hearing.  Though he had been traveling back and forth to exercise parenting time, he testified and argued at the hearing that he could not continue to do so.  His counsel noted during closing argument that, given the distance between the parties, "obviously something has to change."

¶ 5  The parties and the CFI testified about an incident that occurred in 2017 involving the children and their half-sister, K.C., who is not at issue in this case.  The court found, "[K.C.] was discovered to have been engaging in sexualized behavior with the [children] when all were very young."  The court also heard testimony about father's belief that, in 2020, K.C. had applied diaper cream to P.L.M.'s "bottom."  For her part, mother disputed that the 2020 incident occurred.

¶ 6  At the time of the hearing on father's motion to relocate, a no-contact order prohibiting contact between the children and K.C.

was in effect; at that point, P.L.M. was ten years old, S.M. was eleven, and K.C. was fifteen.

¶ 7    Following the hearing, the court issued a written order denying the relocation request but nonetheless modifying child support based on changes in the parties' incomes. The court did not modify parenting time, though father had moved to Kentucky.

## II.    Post-Decree Relocation

¶ 8    Father contends that the court erred in its ruling denying relocation for multiple reasons. He argues that the court misapplied the law, made insufficient findings, issued an arbitrary decision, and failed to issue a new parenting time plan. We agree with father that the court erred by not entering a new parenting time schedule, but we reject his remaining contentions.

### A.    Standard of Review and Applicable Law

¶ 9    As with other parenting time matters, the district court has discretion over this issue. *See In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007). We therefore will not disturb a relocation decision absent an abuse of discretion. *In re Marriage of Ciesluk*, 113 P.3d 135, 148 (Colo. 2005). A district court abuses its discretion when its decision is manifestly arbitrary, unreasonable,

or unfair. *In re Marriage of Gibbs*, 2019 COA 104, ¶ 8. But we review de novo whether a district court applied the proper legal standard. *See In re Marriage of Morgan*, 2018 COA 116M, ¶ 7.

¶ 10 Section 14-10-129(2)(c), C.R.S. 2025, establishes the procedure that the court must follow in deciding a motion to relocate by a parent with majority or equal parenting time. *See Ciesluk*, 113 P.3d at 140-42; *In re Marriage of DeZalia*, 151 P.3d 647, 650 (Colo. App. 2006). The court must consider the best interest factors in section 14-10-124(1.5)(a), C.R.S. 2025, and the relocation factors in section 14-10-129(2)(c) in evaluating the child's best interests as well as the parents' interests relative to the requested relocation. *See Ciesluk*, 113 P.3d at 140. The court must disclose the reasons for its decision and make specific findings with respect to the relevant statutory factors. *Id.* at 148, 150.

¶ 11 Each parent has the burden to persuade the court that the relocation would be in, or contrary to, the child's best interests. *Id.* at 148. If the court decides it is not in the best interests of the child to relocate and the parent who sought

relocation still wishes to relocate, "a new parenting time plan will be necessary." *Id.*

## B.    The District Court's Ruling

¶ 12    The court noted it was required to consider the factors in section 14-10-129(2)(c) and made the following pertinent findings:

- Father had already moved to Kentucky and wished for the children to join him, believing this area presented more opportunities for them.  *See* §§ 14-10-124(1.5)(a)(I), 14-10-129(2)(c)(I).

- Mother remained in Colorado and sought to "preserve the status quo."  *See* §§ 14-10-124(1.5)(a)(I), 14-10-129(2)(c)(II).

- Both parents had a close connection with the children and were engaged in quality family time with them.  *See* §§ 14-10-124(1.5)(a)(III), 14-10-129(2)(c)(III).

- The Kentucky schools presented better educational and extracurricular opportunities.  *See* § 14-10-129(2)(c)(IV).

- Mother had extended family near her in Colorado.  Father had some extended family about three to four hours from his Kentucky home.  *See id.* at (2)(c)(V).

5

- There was no primary caregiver because the parents equally shared parenting time. *See id.* at (2)(c)(VI).

- Relocation would likely be disruptive for the children and would distance them from mother's extended family and other "supports," including their therapist, with whom they were doing well. *See id.* at (2)(c)(VII).

- Both parents were fit and able to adequately address regular parenting issues, as well as "extraordinary and difficult issues that arise." *See id.* at (2)(c)(IX).

- To the extent that S.M. struggled with "serious emotional difficulties," his current mental health caregivers were adequately addressing the need, and relocation would disrupt his care. *See id.*

¶ 13    The court then "[t]urn[ed] to the general statutory best-interest factors" it had not yet addressed and made additional findings concerning the section 14-10-124(1.5)(a) factors:

- The children supported relocation but were unable to maturely and independently express those wishes. *See* § 14-10-124(1.5)(a)(II).

- The children were doing well in school and were adjusted to their school, home, community, and routines in Colorado. *See id.* at (1.5)(a)(IV).

- No party had any health issue that should affect parenting time. *See id.* at (1.5)(a)(V).

- Both parties were able to put the children's needs ahead of their own. *See id.* at (1.5)(a)(XI).

¶ 14 The court determined that factors like "the children's current adjustment, negative likely impacts of relocation and distance from current extended family and supports" weighed heavier than the "limited benefit to improved access to educational and extracurricular activities in Kentucky." Accordingly, it denied the relocation request.

¶ 15 The record supports the court's findings. The children had lived in their Colorado community and attended schools there for their entire lives. The children saw their nearby family every week of mother's parenting time, and mother testified that they "adore" their toddler half-sibling, whom they resided with. The children also participated in various activities in their community, such as playing soccer, riding horses, and going fishing. Mother stated she

thought the children were happy with their therapist and had been seeing her for six months as of the time of the hearing.

¶ 16 While father argued that mother had not adequately addressed past issues, like the incident involving K.C., the CFI opined that that such claims by father were unfounded. The court found the CFI's opinion persuasive and determined that both parents were adequately addressing the children's needs. *See id.* The court also noted that the incident involving K.C. had occurred nearly eight years prior.

C. The District Court Correctly Applied the Law When It Denied Relocation

¶ 17 As outlined, the court considered and made findings concerning the section 14-10-129(2)(c) factors and the best interest factors. *See* § 14-10-124(1.5)(a)(II), (IV), (V), (XI). The court therefore correctly applied the relevant legal standard. *See* § 14-10-129(2)(c); *Ciesluk*, 113 P.3d at 150.

¶ 18 To the extent that father asserts that the court was required to state even more explicitly that it considered the section 14-10-124(1.5)(a) factors, we disagree. The court's findings are sufficient such that we can discern the basis of its ruling. *See In re Marriage*

8

*of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008); *see also People in Interest of A.M.K.*, 68 P.3d 563, 566 (Colo. App. 2003) (the district court need not make specific findings on every factor listed in the statute so long as there is some indication in the record that it considered the pertinent factors).[1]

¶ 19     Father also argues, for the first time on appeal, that the court was required to apply section 14-10-127.5(3)(a), (3)(b), and (3.5), C.R.S. 2025, which relates to children exposed to domestic violence or child abuse, in deciding relocation.  Father now theorizes that K.C. was an "accused party" of "child sexual assault" for purposes of the section, which in turn required the court to engage in various considerations under these subsections.  *See* § 14-10-127.5(3)(a) (listing mandatory considerations for the court in Title 14 proceedings concerning the allocation of parental responsibilities (APR) in which, as relevant here, "a claim of . . . child sexual abuse,

---

[1] Father appears to imply that the district court did not follow *In re Marriage of Ciesluk*, 113 P.3d 135, 149 (Colo. 2005), because the court required him to show how the move would "enhance" the children's situation.  We do not address this issue because father has not developed the argument.  *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 (an appellate court does not consider undeveloped and unsupported arguments), *aff'd*, 2021 CO 56.

has been made to the court, or the court has reason to believe that *a party* has committed . . . child sexual abuse") (emphasis added); (3)(b) (outlining actions a court shall not take in such proceedings); (3.5) (providing that, in such proceedings, the court "shall give strong consideration to a child's stated preference" if it is consistent with the paramount consideration given to their safety and needs).

¶ 20     As relevant here, the statute defines "accused party" as, "unless the context otherwise requires[,] . . . a *parent* in a case to determine *parental responsibilities* who has been accused of . . . child sexual abuse." § 14-10-127.5(2)(a) (emphasis added). Father argues that the context of the subsections described above required the court to treat K.C. as an "accused *party*" and apply those subsections.

¶ 21     We are not convinced. Given the particular circumstances of both this case and father's argument — namely, the fact that K.C. is a minor child, not a parent of the children, and not a party to the case — we conclude that father had to alert the district court to his argument that section 14-10-127.5(3)(a), (3)(b), and (3.5) applied to this case to preserve it for review. *See* § 14-10-123(1), C.R.S. 2025 (outlining who may commence an APR proceeding); *see also People*

*in Interest of S.A.*, 2022 CO 27, ¶ 30 ("Without personal jurisdiction over an individual, a court is powerless and cannot issue legally binding and enforceable orders."); *cf.* § 14-10-127.5(3)(b)(I) (the court shall not "[r]emove a child from a protective party solely to improve a deficient relationship with an accused party").

¶ 22    We are not persuaded by father that preservation was not required because his argument "ar[ose]" from the court's relocation order or findings therein, where the court generally addressed relocation, without addressing the subsections that he now urges apply.  Therefore, we do not address this issue.  *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("[I]ssues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court.").

¶ 23    Accordingly, the court properly applied the legal standard.  *See Morgan*, ¶ 7.

## D. The District Court Did Not Abuse Its Discretion in Denying Relocation

¶ 24 Father also argues that the district court made insufficient findings. As noted, the court made sufficient findings for review, and father's argument is essentially a request for us to reweigh the evidence in his favor. In support, father emphasizes several aspects of the testimony at the hearing, such as the size of his home relative to mother's.

¶ 25 We decline this invitation to reweigh the evidence and substitute our judgment for that of the district court. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (the weight, probative force, and sufficiency of the evidence, and the inferences and conclusions drawn therefrom, are matters within the sole discretion of the district court); *In re Marriage of Nelson*, 2012 COA 205, ¶ 35 (when reviewing for an abuse of discretion, an appellate court will not substitute its judgment for that of the district court even if evidence in the record could have supported a different result); *cf. In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989) (an appellate court may presume that the district court considered all the

evidence presented, even if the order does not expressly recite such evidence).

¶ 26    We further reject father's argument that the court "disregarded" (1) the no-contact order in place between K.C. and the children and (2) an unsigned safety plan, drafted in 2020 and admitted at the hearing, which outlined parameters for contact between the children and K.C.  The no-contact order remained in effect at the time of the hearing, making the safety plan irrelevant. And, while the court did not explicitly address the no-contact order, this was likely, in part, due to the fact that the court denied relocation and did not modify the parenting time orders.  Again, the no-contact remained in effect.  Notably, K.C. also "primarily live[d] away from the [children]" with her father in Montrose, Colorado.

¶ 27    We also disagree with father that the court was required to make findings resolving his argument that the CFI improperly applied the endangerment standard.  *See* § 14-10-129(1.5)(a).  To be sure, the CFI initially testified that she believed the endangerment standard had to be met; however, she then provided clarification, stating, "I knew . . . that the request wasn't to restrict parenting time.  So I may have misapplied that . . . .  I know that the case

13

wasn't about endangerment." Regardless of any confusion in her testimony, in her admitted report, the CFI specifically analyzed both the relocation and the best interests of the child factors, and the report revealed no indication that the CFI had made recommendations based off of the endangerment standard. Regardless, the court independently assessed the evidence and applied the statutory factors to reach its determination that relocation was not in the children's best interests. *See Thorburn,* ¶ 49; *Ciesluk,* 113 P.3d at 150.[2]

¶ 28 Finally, to the extent that father argues that the court erred by finding that S.M. had multiple "mental health caregivers," as opposed to a singular caregiver, he concedes that the child was seeing a therapist at the time of the hearing and demonstrates no harm based on the court pluralizing "caregiver." *See* C.R.C.P. 61.

---

[2] We do not address father's unpreserved arguments that (1) the court failed to find that the CFI completed domestic violence and child abuse training required under section 14-10-127.5(5)(a); and (2) the CFI's opinion that that S.M. experienced "serious emotional difficulties," was an improper "diagnos[is]." *See Melat,* ¶ 18.

### E. The District Court Erred by Not Modifying Parenting Time Orders

¶ 29      We next address father's contention that the district court erred by not issuing a new parenting time plan, given his move to Kentucky. We agree.

¶ 30      As noted, our supreme court in *Ciesluk* stated that, in cases where the relocation request is denied but the parent still desires to relocate, "a new parenting time plan will be necessary." 113 P.3d at 148; *see also* § 14-10-124(1.5)(a)(VIII) (requiring the court to consider "[t]he physical proximity of the parties to each other as this relates to the practical considerations of parenting time").

¶ 31      At the time of the hearing, father had already moved to Kentucky and had resided there for about a year. We conclude that the court's failure to enter a new parenting time order, given father's relocation, was error. *See Ciesluk*, 113 P.3d at 148; § 14-10-124(1.5)(a)(VIII).

¶ 32      We reject mother's assertion that *Ciesluk* does not require a new parenting time plan given the record in this case. She relies on the fact that father, during the pendency of the motion, (1) continually traveled back and forth to exercise his week-on/week-

off parenting time and (2) maintained access to a home that his former employer owned in Colorado. But father testified that traveling back and forth was "very draining physically and financially" and that he could not continue to do so. While his access to his former employer's home continued during the pendency of the motion, he testified that the move to Kentucky was permanent. Specifically, he stated that he had put "pretty much all [his] eggs in that basket," all his money was "tied up" in the Kentucky house, all his personal belongings were there, and "about" all he had left in the Colorado home were air mattresses. *See Ciesluk*, 113 P.3d at 148; *cf. Spahmer v. Gullette*, 113 P.3d 158, 164 (Colo. 2005) (in the initial APR, the district court must "accept the location in which each party intends to live"). And, while the court noted that father had been "traveling substantially" to continue to exercise his parenting time, it did not make any findings explaining why it did not modify parenting time given the distance between the parties.

¶ 33 Because the court erred by not issuing a new parenting time plan that could be exercised with father in Kentucky, we remand the case for the court to issue a new parenting time order.

### III.  Remaining Contentions and Remand Instructions

¶ 34   Father also argues that the court erred with respect to child support for multiple reasons, including by apparently challenging the court's income findings.

¶ 35   The order modifying child support was based on the parents' sharing an equal number of overnights.  Thus, while there was evidence admitted at the hearing that supported the court's income findings, the court must redetermine child support based the new parenting time orders entered on remand.  Therefore, we reverse the court's ruling modifying child support and do not address any further child support arguments.

¶ 36   We remand the case for the court to issue a new parenting time plan that can be exercised with father living in Kentucky, based on the best interests of the children at the time of the remand proceedings.  *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27.  Because there has been a lengthy passage of time since the relocation hearing, while the court may rely on the existing record, it must also provide the parties with an opportunity to present evidence concerning the children's current circumstances.  *See id.*

¶ 37    To the extent that the children's circumstances at the time of the remand proceedings involve a no-contact order concerning K.C., the court should — exercising its discretion — take the order into consideration when determining parenting time.  *See* § 14-10-124(1.5)(a)(III) (the court shall consider all relevant factors, including the interaction of the child with his or her siblings).  If a no-contact order is no longer in effect at the time of the court's ruling, however, the court should consider the safety of the children during any parenting time, including overnights.  *See* § 14-10-124(1.5)(a) ("The court . . . may make provisions for parenting time that the court finds are in the best interests of the child, with the child's safety always paramount . . . .").

¶ 38    We also direct the court on remand to issue a new child support order based on its new allocation of parenting time.

¶ 39    The existing parenting time order and support order shall remain in effect pending the new orders on remand.  *See M.W.*, ¶ 27.[3]

---

[3] Father does not challenge the court's denial of his motion to modify decision-making in the relocation order, and therefore, we do not disturb the court's denial of his request.

## IV. Appellate Attorney Fees

¶ 40    Mother requests attorney fees under section 14-10-119, based on the discrepancies in the parties' incomes.  Because the district court is better positioned to determine the parties' current relative financial circumstances, we remand her request to the district court.  *See* C.A.R. 39.1; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

## V. Conclusion

¶ 41    The district court's order denying father's relocation motion is affirmed in part and reversed in part.  We reverse only the portions of the order that (1) failed to issue a new parenting time plan and (2) modified child support, and we remand the case to the district court for it to consider those two issues consistent with this opinion.

JUDGE PAWAR and JUDGE GOMEZ concur.